UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MARKEL AMERICAN INSURANCE COMPANY,

         Plaintiff,

  -against-

MATTHEW LINHART,

         Defendant.
----------------------------------------------------------------X

**ORDER**
11-CV-5094 (SJF)(GRB)

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E D N Y
★   NOV 1 6 2012   ★
**LONG ISLAND OFFICE**

FEUERSTEIN, J.

On October 20, 2011, plaintiff Markel American Insurance Company ("plaintiff") commenced this action against defendant Matthew Linhart ("defendant"), seeking, inter alia, a declaratory judgment that certain damage to defendant's yacht is not covered by a marine insurance policy issued by plaintiff. [Docket Entry No. 1]. On January 5, 2012, defendant filed an answer with several counterclaims. [Docket Entry No. 2]. On July 11, 2012, the Court granted plaintiff's motion to dismiss defendant's third and fourth counterclaims for consequential and punitive damages. [Docket Entry No. 20] (the "Dismissal Order").

Defendant now moves pursuant to Rule 59(e) of the Federal Rules of Civil Procedure ("Rule 59(e)") and Local Civil Rule 6.3 ("Local Rule 6.3") for reconsideration of the Dismissal Order.[1] For the reasons that follow, defendant's motion is denied.

I. Background

---

[1] Although defendant moves for reconsideration pursuant to both Local Rule 6.3 and Rule 59(e), since no judgment has yet been entered in this action, its reliance on Rule 59(e) is misplaced. Accordingly, the Court deems defendant's motion to be one for reconsideration pursuant to Local Rule 6.3 only. However, "[t]he standards that are set forth in both Fed. R. Civ. P. 59(e) and Local Rule 6.3 are identical." Regan v. Conway, 768 F. Supp.2d 401, 408 (E.D.N.Y. 2011).

1

Plaintiff issued a marine insurance policy to defendant providing twenty-five thousand dollars ($25,000) in coverage for defendant's yacht. Defendant's Memorandum of Law in Support of His Motion for Reconsideration and/or Reargument [Docket Entry No. 23-1] ("Def. Mot.") at 1. After defendant's yacht was damaged in an incident on September 3, 2011, defendant filed a claim with plaintiff seeking payment for the cost of repairs. Complaint [Docket Entry No. 1] ("Compl.") at ¶ 9.

Albert E. Truslow, a marine surveyor hired by defendant, inspected the damaged yacht on September 8, 2011 and issued a report (the "Truslow Report") to defendant on September 15, 2011. Def. Mot. at 1; Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Reconsideration [Docket Entry No. 24] ("Pl. Opp.") at 2. After receiving the Truslow Report, plaintiff denied defendant's claim due to its determination that the incident was caused by "a failure of the vessel's port shaft coupler which occurred over time and due to normal wear and tear" and defendant's "failure to maintain the vessel in good and/or in seaworthy condition." Compl. at ¶¶ 11-12.

On October 12, 2011, defendant's counsel sent plaintiff a letter demanding that the Truslow Report be disclosed to defendant. Def. Mot. at 2. Plaintiff did not provide defendant with the Truslow Report and instead initiated this action on October 20, 2011. Id. Defendant filed his answer (including counterclaims) on January 5, 2012, [Docket Entry No. 2], plaintiff answered and moved to dismiss the third and fourth counterclaims on January 18, 2012, [Docket Entry Nos. 3, 4], and defendant served his opposition to the motion to dismiss on February 22, 2012, [Docket Entry No. 9]. At an initial conference held on February 23, 2012, the Court rejected plaintiff's argument that the Truslow Report was privileged and ordered that it be produced to defendant.

Defendant argues that plaintiff's delay in producing the Truslow Report denied him an adequate opportunity to oppose plaintiff's motion to dismiss the third and fourth counterclaims. According to defendant, the Truslow Report provides support for defendant's allegation that plaintiff acted in bad faith by denying defendant's claim for coverage, and the Court should reconsider its holding in the Dismissal Order that defendant's allegation of bad faith is implausible. Def. Mot. at 4-7.

II.  Standard of Review

A.  Motion for Reconsideration Standard

Motions for reconsideration are governed by Local Rule 6.3, which provides, inter alia, that a "notice of motion for reconsideration or reargument of a court order determining a motion shall be served within fourteen (14) days after the entry of the court's determination of the original motion . . . [with] a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." A motion for reconsideration may be granted upon the basis of (1) "an intervening change of controlling law"; (2) "the availability of new evidence"; or (3) "the need to correct a clear error or prevent manifest injustice." Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992). A motion for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir.1995); see also Regan v. Conway, 768 F.Supp.2d 401, 409 (E.D.N.Y.2011) ("To preserve scarce judicial resources and to avoid piecemeal litigation, a motion for reconsideration is narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court.") (internal quotation marks omitted). It is within the sound discretion of the district court

3

whether or not to grant a motion for reconsideration. Regan, 768 F. Supp. 2d at 408 (citing Devlin v. Transp. Commc'ns Int'l Union, 175 F.3d 121, 132 (2d Cir. 1999)).

B.   Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'" Id. (quoting Twombly, 550 U.S. at 557).

In deciding a motion pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y., 631 F.3d 57, 63 (2d Cir. 2011); see also Ruston v. Town Bd. for the Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679; see also Matson, 631 F.3d at 63 ("While a complaint need not contain detailed factual allegations, it requires more than an unadorned, the defendant-unlawfully-harmed-me accusation.") (internal quotation marks and citation omitted).

4

III.  Analysis

Defendant alleges in the third counterclaim that in handling his claim plaintiff "engaged in wrongful conduct" which was "of a morally reprehensible or wantonly dishonest nature." Defendant's Answer and Counter Complaint [Docket Entry No. 2] at ¶¶ 27-28. In connection with this claim, defendant seeks "punitive and/or exemplary damages" of "not less than $100,000." Id. at ¶ 28. In the fourth counterclaim, titled "consequential damages," defendant seeks reimbursement of the fees and costs he has incurred in connection with this action. Id. at ¶ 30.

In general, punitive damages may be assessed for the "bad faith refusal by an insurer to settle an insurance claim for which it is liable." Thyssen, Inc. v. S.S. Fortune Star, 777 F.2d 57, 63 (2d Cir. 1985) (quoting Restatement (Second) of Contracts § 355 (1979)).[2] Likewise, "the general rule is that the award of fees and expenses in admiralty actions is discretionary with the district judge upon a finding of bad faith." Ingersoll Milling Mach. Co. v. M/V Bodena, 829 F.2d 293, 309 (2d Cir. 1987); see also Goldmark, Inc. v. Catlin Syndicate Ltd., No. 09-CV-3876, 2011 WL 743568, at *3 (E.D.N.Y. Feb. 24, 2011) ("[C]onsequential damages are permitted when they derive from an insurer's bad faith refusal to pay an insured's claim and such damages were reasonably contemplated by both parties at the time of the contract's execution."). To show an insurer's bad faith, "a plaintiff [must] prove more than merely 'an arguable difference of opinion' over coverage; to recover extra-contractual damages the plaintiff must show 'such bad faith in denying coverage that no reasonable carrier would, under the given facts, be expected to assert it.'" Haym Salomon Home for Aged, LLC v. HSB Grp., Inc., No. 06-CV-3266, 2010 WL 301991, at *5

---

[2] In Thyssen, the court noted that it was unable to locate any case in which an admiralty court had awarded punitive damages for a breach of contract. 777 F.2d at 62.

5

(E.D.N.Y. Jan. 20, 2010) (quoting Sukup v. State of N.Y., 19 N.Y.2d 519, 522 (1967)). "[I]t is not bad faith for an insurer to fight liability when policy coverage is unclear." Am. Nat'l Fire Ins. Co. v. Kenealy, 72 F.3d 264, 271 (2d Cir. 1995).

> The Court previously held that
>
> defendant's allegations of bad faith must be dismissed because they are completely conclusory and are not plausible. As defendant recognizes in his answer, [plaintiff] denied his claim only after conducting an investigation and concluding that the damage was caused by defendant's own failure to maintain the vessel. There are no allegations from which the Court could conclude that [plaintiff] denied the claim in bad faith, or that its actions were 'wrongful' such that they would permit an award of punitive damages. At most, defendant alleges that plaintiff denied his claim and failed to provide him with a copy of the marine survey conducted after the incident.

Dismissal Order at 4-5. The only issued presented by the pending motion is whether the contents of the Truslow Report may reasonably be expected to alter the foregoing conclusion upon reargument.

Defendant's argument that the Truslow Report provides support for his allegation of bad faith is based upon alleged inconsistencies between the Truslow Report and the letter issued by plaintiff declining defendant's claim for coverage (the "declination letter"). According to defendant, "[plaintiff] hired an independent surveyor, i.e., Al Truslow, to assess the Vessel and is bound by that surveyor's assessment," yet the declination letter contained conclusions not supported by the surveyor's findings. Def. Mot. at 6. The declination letter states that "[b]ased upon the inspection of [defendant's] vessel and the photographs of the coupler fastener and fastener pieces, it is [plaintiff's] opinion that the failure at the port shaft coupler occurred over time . . . and was not due to a sudden accidental striking of a submerged object." Id. Defendant asserts that "[n]owhere in the Truslow Survey Report is there anything to support [plaintiff's] position that the 'failure at the port shaft coupler occurred over time,'" id., and that "'[m]echanical

failure' is not excepted under the all-risk policy of marine insurance, and therefore, must be covered by [plaintiff]," id. at 7.

The insurance policy states that plaintiff "will cover sudden accidental direct physical loss or damage to the insured yacht." Compl. Ex. A. at 6. The policy specifically excludes coverage for loss caused by or resulting from, inter alia, "wear and tear, gradual deterioration, . . . [or] failure to maintain the insured yacht . . . in good condition so that the insured yacht cannot be damaged by ordinary weather or water conditions or the rigors of normal use." Id. at 7. The declination letter states plaintiff's reason for denying coverage as follows:

> By your own description of event [sic], you left port with a vibration in the driveline and simply assumed the issue would resolve itself. No action was taken to address this vibration. There is no physical evidence to support the striking of a submerged object. Three of the propeller shaft coupler fasteners failed over time allowing the propeller shaft coupler face to partially disengage from the transmission coupler face allowing the propeller shaft to swing so widely out of its normal plane of rotation it contacted and significantly damaged the propeller tube. The compromised propeller tube allowed seawater to enter the vessel. The photographs of the fastener pieces are not sheared off. The bolt ends are supportive of fatigue failure from repeated cycling as they loosened up over time.

It is clear that plaintiff relied upon the Truslow Report in deciding to deny coverage and that the decision is at least arguably supported by the findings of the Truslow Report. The declination letter references the specific findings in the Truslow Report that, according to plaintiff, support a denial of coverage: (1) "when [defendant] left the dock he felt a vibration and thought it might be a bag or debris in the prop shaft tunnel"; (2) "the propeller shaft tube area was severely damaged"; (3) "[c]lose examination of the hull did not show any scrapes/scratches or gouges from impact"; (4) "no signs of impact to the running gear was [sic] observed"; (5) the "strut and strut mounting areas were unscathed as was the rudder"; (6) there was "no deformity" on the propeller and blades; (7) "the port propeller shaft coupler was hanging onto the transmission's output shaft

glange by a single bolt"; and (8) the vibration of the propeller "caused the rear engine mount fasteners to come loose from the stringer." Truslow Report at 1-2. The Truslow Report concluded that "the evidence clearly shows that the cause of damage was due to failed propeller shaft coupling fasteners," i.e., "[m]echanical [f]ailure." Id.

The declination letter accurately characterized the findings of the Truslow Report, and the absence of evidence of impact and the apparent evidence of deterioration and loosening of the coupler fasteners arguably supports plaintiff's conclusion that the damage was caused by gradual wear and tear and a failure to adequately maintain the yacht. Furthermore, the Truslow Report's description of the cause as a "mechanical failure" does not imply that the mechanical failure itself was not caused by wear and tear or lack of proper maintenance.

Defendant will have an opportunity to challenge plaintiff's determination of the cause of the damage, but the argument that plaintiff lacked any legitimate basis for denying coverage is incorrect. See Ingersoll, 829 F.2d at 309-10 (holding that "ambiguity" in an insurance policy precluded a finding of bad faith); Kenealy, 72 F.3d at 271 ("[I]t is not bad faith for an insurer to fight liability when policy coverage is unclear."). Therefore, the contents of the Truslow Report cannot "reasonably be expected to alter the conclusion reached by the court" that defendant's allegation of bad faith is implausible and that the third and fourth counterclaims must be dismissed. Shrader, 70 F.3d at 257.[3] Accordingly, defendant's motion for reconsideration is denied.

III. Conclusion

For the foregoing reasons, defendant's motion for reconsideration [Docket Entry No. 23] is

---

[3] Defendant's argument that plaintiff's delay in producing the Truslow Report itself indicates bad faith is without merit.

denied.

**SO ORDERED.**

                                                                             s/ Sandra J. Feuerstein

                                                                             Sandra J. Feuerstein
                                                                             United States District Judge

Dated:       November 16, 2012
                Central Islip, New York